FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTINA PETRA GONZALES,<br><br>  Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 4:17-CV-05157-LRS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 16).

## JURISDICTION

Christina Petra Gonzales, Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and for Title XVI Supplemental Security Income benefits (SSI) on April 25, 2013. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on September 9, 2015 before Administrative Law Judge (ALJ) Kimberly Boyce. Plaintiff testified at the hearing, as did Vocational Expert (VE) Trevor Duncan. On June 9, 2016, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has an 11th grade education[1] and past relevant work experience as an agricultural produce packer. She alleges disability since April 1, 2012, on which date she was 40 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749

---

[1] Per her Disability Report, AR at p. 249.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to develop the record by ordering additional intellectual testing; 2) rejecting the opinion of examining clinical psychologist, CeCilia Cooper, Ph.D.; and 3) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920;

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medically determinable impairments which include borderline intellectual functioning, affective disorder, anxiety disorder, personality disorder, somatoform disorder, osteoarthritis and obesity;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform light work, defined in 20 C.F.R. §§404.1567(b) and 416.967(b), except she cannot climb ladders, ropes or scaffolds; can frequently stoop, kneel, crouch and climb ramps and stairs; can occasionally crawl; can perform work in which concentrated exposure to extreme cold, heat, vibration, fumes, odors, dusts, gases, poor ventilation and/or hazards is not present; she can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration and in which the tasks to be performed are predetermined by the employer; she can cope with occasional changes in the work setting; she can work in proximity to co-workers, but not in a team or cooperative effort; she can perform work that does not require interaction with the general public as an essential element of the job, but incidental contact with the general public is not precluded;

4) Plaintiff's RFC precludes performance of her past relevant work;

5) Plaintiff's RFC allows performance of other jobs existing in significant numbers in the national economy, including production assembler, hand packager and assembler.

Accordingly, the ALJ concluded Plaintiff is not disabled.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 5**

**DUTY TO DEVELOP RECORD**

The ALJ has a basic duty to inform herself about facts relevant to her decision. *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952 (1983). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty is triggered by ambiguous or inadequate evidence in the record and a specific finding of ambiguity or inadequacy by the ALJ is not necessary. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Plaintiff underwent a psychological examination by Philip G. Barnard, Ph.D., on February 8, 2013. This examination was conducted at the behest of the Washington State Department of Social and Health Services (DSHS). The examination included testing, specifically the Wechsler Memory Scale (WMS)-IV and the Wechsler Adult Intelligence Scale (WAIS)-IV. (AR at p. 330). During testing, Plaintiff "obtained a Raw Score of 0 on Trial 1 and Trial 2, indicating extremely poor effort." (AR at p. 330). Dr. Barnard diagnosed the Plaintiff with "Malingering," in addition to "Learning Disorder, NOS [Not Otherwise Specified]," and "Borderline Intellectual Functioning." (AR at p. 328). He opined that Plaintiff had no more than "moderate" limitations on her abilities to perform basic work activities. (AR at p. 329). Dr. Barnard asserted that Plaintiff "engaged in significant exaggeration and magnification symptomatology" and "[s]he appeared to be consciously deceptive with poor motivation and poor effort on the psychological testing process." (AR at p. 330). On the WAIS-IV, Plaintiff "obtained a Full Scale [Intelligence Quotient] Estimate of 49." (AR at p. 330).

An IQ of 69 and below is classified as "intellectual disability" as reflected in Listing 12.05 which specifies four ways an individual may qualify as intellectually disabled without requiring any further inquiry into her ability to work: (1) "[m]ental incapacity . . . such that the use of standardized measures of intellectual functioning

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6

is precluded;" (2) [a] valid verbal, performance, or full scale IQ of 59 or less;" (3) "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;" and (4) "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two [milder impairments]." It is apparent that because of what he considered Plaintiff's poor effort on testing, Dr. Barnard did not consider valid the full scale IQ estimate of 49 yielded from that testing.

Over a year later on April 10, 2014, Plaintiff was psychologically evaluated by CeCilia Cooper, Ph.D.. Among the records reviewed by Dr. Cooper was the evaluation by Dr. Barnard. Dr. Cooper noted that Plaintiff's scores on the WAIS-IV and WMS-IV "were in the extremely low range" and "[i]t was felt that she did not make much effort to do the tasks involved." (AR at p. 468). Regarding the "Memory" portion of her Mental Status examination, Dr. Cooper indicated that Plaintiff "repeated one trial of five digits forward correctly on the digit span subtest of the WAIS-IV," that "[h]er raw score was seventeen," and that "[h]er scaled score was five which is in the extremely low range." (AR at p. 472).[2] It is unclear, however, if Dr. Cooper was referring to scores from the WAIS-IV testing performed

---

[2] The WAIS-IV consists of four indexes, one of which is the Working Memory Index (WMI). One of the Working Memory subtests is the digit span which has three parts: Digit Span Forward (individual tries to repeat digits forward); Digit Span Backward (individual tries to repeat digits backward); Digit Span Sequencing (individual tries to repeat digits in ascending order). The digit span subtest measures auditory recall, short term memory and working memory. http: washingtoncenterforcognitivetherapy.com/wp-content/uploads/2015/01/greenwood_description-wais-1.pdf Dr. Barnard indicated that Plaintiff's "Composite Score" on the WMI portion of the WAIS-IV administered by him was 50.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

by Dr. Barnard. Those scores do not match up with scores reported by Dr. Barnard on the DSHS form completed by him and Dr. Barnard's actual testing report is not part of the record. It is unclear whether Dr. Cooper performed her own WAIS-IV testing, or if she is referring to scores from testing conducted by another provider, other than Dr. Barnard. Dr. Cooper felt that Plaintiff's short-term memory and immediate memory were impaired. (AR at p. 472). She diagnosed Plaintiff with "Major Depressive Disorder, recurrent, with psychotic features," "Somatic Symptom Disorder, Persistent, Moderate," and "Borderline Intellectual Functioning (with learning disabilities, by history)."[3]

At the administrative hearing, Plaintiff's counsel referred to Dr. Cooper's comment about Plaintiff's digit span subtest and the resulting scores, although he errantly attributed the comment to Mary Pellicer, M.D., instead of Dr. Cooper. (AR at p. 49).[4] Counsel suggested Dr. Cooper conducted her own WAIS-IV and that it was "just not in here [the record] for some reason." (AR at p. 49). Counsel stated the following:

> So if there are scores, I don't know if there's a way to request that from [Cooper]. I don't know if I'm allowed to write [Cooper]. I don't want to cross boundaries. I guess I don't know what the policy on that is to find out if she did that testing or not. That could make a listings issue if it's low enough. I just don't know.

(AR at p. 50). The ALJ responded that she would "have a look at it" (AR at p. 50), and at the conclusion of the hearing, acknowledged her "assignment [was] to figure our where those test scores are." (AR at p. 80).

The ALJ's written decision gives no indication what, if any, effort was made

---

[3] A full scale IQ in the 70 to 79 range is considered "borderline."

[4] Dr. Pellicer conducted a physical examination of the Plaintiff on April 11, 2014. (AR at pp. 478-83).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

by her to track down those test scores. Instead, she acknowledged that counsel had requested a consultative psychological evaluation for the purpose of having the Plaintiff retake intelligence and memory testing, but declined to do that on the basis that "the longitudinal record contains sufficient medical evidence of the claimant's mental impairments." (AR at p. 20). The ALJ specifically mentioned the results of Dr. Barnard's testing in February 2013. Because of Dr. Barnard's reporting that Plaintiff appeared to be consciously deceptive with poor motivation and effort on testing, that ALJ was "not persuaded that [Plaintiff] would give her best effort if she were to retake these tests." (AR at p. 20).

Obviously, what has never been resolved is whether Dr. Cooper was referring to WAIS-IV testing conducted by Dr. Barnard, by herself, or by some other provider, and where the actual testing report might be. At the hearing in September 2015, the ALJ thought it important enough to resolve this question, but apparently changed her mind by the time her written decision was issued almost nine months later in June 2016. The court concludes there is ambiguous or inadequate evidence in the record which requires further development of the record and at this point, it seems the best and most efficient course, considering the passage of time, is simply for the Commissioner to order a consultative psychological examination with an entirely new round of intelligence testing (WAIS-IV and WMS-IV). The examiner's written assessment should include the testing report. The results will be considered in determining whether Plaintiff meets Listing 12.05 and if not, how they impact Plaintiff's RFC and her ability to perform other work in the national economy. "The importance of IQ test results in adjudicating intellectual disability is not limited to the claimant's ability to meet the listing at step three of the five-step process." *Garcia*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

*v. Commissioner of Social Security*, 768 F.3d 925, 933 (9th Cir. 2014). [5]

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 16) is **DENIED**. Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for further proceedings as set forth above. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record. The file shall be **CLOSED**.

**DATED** this ___30th___ day of May, 2018.

                *s/ Lonny R. Suko*
                LONNY R. SUKO
              Senior United States District Judge

---

[5] At this juncture, the court makes no determination regarding the ALJ's discounting of Plaintiff's testimony, nor any determination regarding the ALJ's conclusion about Plaintiff's physical RFC.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**